**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and | ) | |
| INTELLECTUAL VENTURES II LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-1274-SLR |
| | ) | |
| MANUFACTURERS AND TRADERS | ) | |
| TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

OF COUNSEL:

Frank M. Gasparo
Todd M. Nosher
Venable LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY 10020
Tel: (212) 370-6273
fmgasparo@venable.com
tmnosher@venable.com

William D. Coston
Martin L. Saad
Venable LLP
575 7th Street, NW
Washington, DC 20004
Tel: (202) 344-4000
wdcoston@venable.com
mlsaad@venable.com

Dated:  December 2, 2013

Chad M. Shandler (#3796)
Travis S. Hunter (#5350)
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
Tel: (302) 651-7836
shandler@rlf.com
hunter@rlf.com

*Attorneys for Defendant Manufacturers
and Traders Trust Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF ARGUMENT ............................................................................................1

NATURE & STAGE OF PROCEEDINGS AND FACTUAL BACKGROUND ...................1

LEGAL AUTHORITY ........................................................................................................3

    I.    Abstract Ideas Are Not Patent Eligible And Claims Drawn To Them Are
Invalid ...............................................................................................................3

    II.   The Question of Patent Eligibility Under 35 U.S.C. § 101  Can and in this
Case Should Be Made at the Pleading Stage ...................................................6

ARGUMENT ......................................................................................................................7

    I.    All Asserted Claims are Invalid under 35 U.S.C. § 101. ..............................7

        A.    The '701 patent .....................................................................................8

        B.    The '137 Patent ...................................................................................11

        C.    The '382 Patent ...................................................................................14

        D.    The '587 Patent ...................................................................................15

CONCLUSION ..................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   800 F. Supp. 2d 613 (D. Del. 2011), *aff'd*, 728 F.3d 1336 (Fed. Cir. 2013) ................... *passim*

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) ........................................................................... 4, 6

*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010) ................................................................................... *passim*

*Brown v. Compass Grp.*,
   No. 11 C 6789, 2012 WL 1231064 (N.D. Ill. Apr. 12, 2012) .................................... 2

*BuySAFE, Inc. v. Google Inc.*,
   No. 11-1282-LPS, 2013 WL 3972261 (D. Del. July 29, 2013) ..................... *passim*

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
   717 F.3d 1269 (Fed. Cir. 2013) ....................................................................... *passim*

*Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 12-2501, 2013 WL 3964909 (D.N.J. July 31, 2013) ........................................ 6

*CyberFone Sys., LLC v. Cellco P'ship*,
   885 F. Supp. 2d 710 (D. Del. 2012) ................................................................ *passim*

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ....................................................................... *passim*

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ........................................................................... 4

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ....................................................................... 4, 17

*Fuzzysharp Techs., Inc. v. Intel Corp.*,
   No. 12-4413-YGR, 2013 WL 5955668 (N.D. Cal. Nov. 7, 2013) ..................... 10, 16

*Fuzzysharp Techs. Inc. v. 3DLabs Inc., Ltd.*,
   447 F. App'x 182 (Fed. Cir. 2011) ...................................................................... 13

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ........................................................................................ 16, 17

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
  No. 13-3599-DLC, 2013 WL 6164341 (S.D.N.Y. Nov. 22, 2013) ................................ *passim*

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) .................................................................................................. *passim*

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
  No. 10-999-SLR, 2013 WL 5436641 (D. Del. Sept. 30, 2013) ............................................5, 6

*Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*,
  No. 12-360-M, 2012 WL 6629561 (W.D. Okla. Dec. 19, 2012) ..............................................6

*Smith v. Maryland*,
  No. RDB-11-2007, 2012 WL 3596098 (D. Md. Aug. 20, 2012) ...............................................2

*UbiComm, LLC v. Zappos IP, Inc.*,
  No. 13-1029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013) .................................... *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) ..........................................................................................6, 10

*Wilson v. Wells Fargo Advisors, LLC*,
  No. 11-511-SLR, 2012 WL 5240815 (D. Del. Sept. 25, 2012) .................................................2

## STATUTES & RULES

35 U.S.C. § 101 ...............................................................................................................................3

## SUMMARY OF ARGUMENT

Defendant Manufacturers and Traders Trust Company ("M&T") respectfully moves the Court to dismiss all counts of Intellectual Ventures I LLC and Intellectual Ventures II LLC's (collectively, "IV") First Amended Complaint (D.I. 14; the "Amended Complaint"). Each claim of IV's four asserted patents recites only an abstract concept and not any patentable feature. Those non-patentable, abstract concepts include:

- Using substitute billing information for security in purchase transactions (U.S. Patent No. 7,664,701 ("the '701 Patent"));

- Allowing users to set self-imposed limits on financial transactions (U.S. Patent No. 8,083,137 ("the '137 Patent"));

- Tailoring web pages to the personal preferences and prior viewing histories of individual users (U.S. Patent No. 7,603,382 ("the '382 Patent")); and

- Organizing digital images (U.S. Patent No. 7,260,587 ("the '587 Patent")).

Because the claims of the asserted patents are drawn to abstract ideas that have no substantive, meaningful limitations to "narrow, confine, or otherwise tie down the claim[s] so that, in practical terms, [they do] not cover the full abstract idea itself," they do not meet the patentability requirements of 35 U.S.C. § 101. Accordingly, IV's Amended Complaint should be dismissed as a matter of law.

## NATURE & STAGE OF PROCEEDINGS AND FACTUAL BACKGROUND

IV filed its original Complaint against M&T on June 12, 2013, claiming direct and indirect infringement of five patents:  the '701, '894[1], '137, '382 and '587 patents.  D.I. 1.  M&T responded by filing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 1, 2013.  D.I. 12-13.  In its motion to dismiss, M&T argued that (1) all claims of the

---

[1]      U.S. Patent No. 6,182,894 ("the '894 patent").

asserted patents are invalid under 35 U.S.C. § 101 because they are directed to abstract non-patentable subject matter; and (2) IV's indirect infringement claims failed to meet the requisite pleading requirements under controlling law.

IV has not opposed M&T's motion to dismiss, but filed an amended complaint on November 15, 2013, which included additional allegations regarding indirect infringement and, tellingly, withdrew its claims based on the '894 patent.  Although IV did not oppose M&T's motion to dismiss, it continues to assert the '701, '137, '382 and '587 patents (*i.e.,* the "asserted patents").[2]  IV now alleges four counts of infringement – one for each of the asserted patents.  In particular, IV alleges that the following systems and services infringe the asserted patents:  1) Pay Bills system/service; 2) Webfolio system/service; 3) Finance*Works* system/service; and 4) ATM Banking system/service.

Beyond this action, the same asserted patents are being litigated in at least *five* other lawsuits brought by IV in five different jurisdictions against other financial institutions.[3]  Indeed, IV's allegations in those cases are *substantively identical* to its allegations here.  And, based on

---

[2]    IV's failure to oppose M&T's original motion to dismiss is a separate and independent basis for granting dismissal of IV's claims.  *See Smith v. Maryland*, No. RDB-11-2007, 2012 WL 3596098, at *4 (D. Md. Aug. 20, 2012) ("if the plaintiff's amended complaint suffers from the same defect as the initial complaint, then the defendant's motion to dismiss is not moot"); *Brown v. Compass Grp.*, No. 11 C 6789, 2012 WL 1231064, at *1 (N.D. Ill. Apr. 12, 2012) (A plaintiff's failure to respond to a defendant's motion to dismiss provides grounds for granting the motion); *Wilson v. Wells Fargo Advisors, LLC*, No. 11-511-SLR, 2012 WL 5240815, at *10 (D. Del. Sept. 25, 2012) citing *Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866, 879 (N.D. Ohio 2006) (plaintiff's failure to respond to defendant's arguments on a Rule 12(b)(6) motion to dismiss was a concession that the cause of action failed to state a claim upon which relief could be granted).

[3]    *See* E.D. Va. Civil Action No. 13-740 (the "Capital One Litigation"); W.D.N.C. Civil Action No. 13-358  (the "Bank of America Litigation"); W.D. Pa. Civil Action No. 13-740 (the "PNC Litigation"); S.D.N.Y. Civil Action No. 13-5386 (the "HSBC Litigation"); and S.D. Ohio Civil Action No. 13-378 (the "Fifth Third Bancorp Litigation").

the infirmity of the asserted patents, several defendants have raised similar Section 101 challenges in their respective litigations.

One defendant, Bank of America, filed a petition with the United States Patent and Trademark Office ("PTO") on November 1, 2013 seeking Covered Business Method ("CBM") review of the asserted patents under 35 U.S.C. § 321, Section 18 of the Leahy-Smith America Invents Act and 37 C.F.R. § 42.300 *et seq.*

Another defendant, Capital One, filed a motion to dismiss the asserted patents and has sought leave to file an early motion for summary judgment seeking invalidity of the same.  In fact, at a hearing on Capital One's motion to dismiss, District Court Judge Anthony Trenga made clear that "these patents certainly raise, in the Court's mind, ***significant issues as to patentability***."  (Hearing Tr. at 58:21-22) (emphasis added).  The court ultimately denied defendant's motion without prejudice to determine whether claim construction may have some bearing on the issue.[4]  *Id.*  The parties have since briefed their claim construction positions and Judge Trenga held a *Markman* Hearing on November 18, 2013.

## LEGAL AUTHORITY

I.     **Abstract Ideas Are Not Patent Eligible And Claims Drawn To Them Are Invalid**

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. §101.  That section, however, "contains an important implicit exception"

---

[4]     Of course – as recent decisions from this district have made clear – courts need not construe claim terms in order to adjudicate a Section 101 motion to dismiss.  *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA, 2013 WL 6019203, at *4 (D. Del. Nov. 13, 2013) (Andrews, J.); *BuySAFE, Inc. v. Google Inc.*, No. 11-1282-LPS, 2013 WL 3972261, at *9 (D. Del. July 29, 2013) (Stark, J.); *see* pp. 6-7 *infra*.

for "laws of nature, natural phenomena, and abstract ideas," which are not patentable. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quotation marks and citations omitted). Abstract ideas are not patentable because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Id.* (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). Any subject matter falling within this exception is not patent-eligible as a matter of law. *Id.*

This tenet cannot be circumvented through "draftsman's art," by trying to dress up an abstract idea with inconsequential steps. *Id.* at 1294 (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978)). Indeed, the addition of "well-understood," "routine," or "obvious" steps does not transform an abstract idea into a patentable concept. *Id.* at 1294, 1298. A patent-eligible application of an abstract idea must include the addition of some inventive concept, so that the claim does significantly more than just describe the abstract idea. *Id.* at 1294, 1297. Simply limiting the application of an abstract idea to a particular "field of use or adding token postsolution components" likewise does not convert the idea into a patent-eligible invention. *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010).[5] To this point, the Federal Circuit has made clear that an abstract principle is not converted into patent-eligible subject matter by simply tying the principle to a computer or computer environment. *See, e.g., Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d

---

[5]    Several Federal Circuit decisions applying this precedent track the Supreme Court's approach. *See, e.g., CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1274 (Fed. Cir. 2013), petition for cert. filed, 82 U.S.L.W. 3131 (U.S. Sept. 4, 2013) (No. 13-298); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011). And, while *CLS Bank* "did not produce controlling reasoning, its holding that the method claim patents were invalid has precedential weight and must be followed by lower courts to the extent that the facts regarding any patents challenged in those courts are similar." *See Lumen View Tech. LLC v. Findthebest.com, Inc.*, No. 13 3599-DLC, 2013 WL 6164341, at *8 (S.D.N.Y. Nov. 22, 2013).

1266, 1278 (Fed. Cir. 2012) ("the use of a computer in an otherwise patent-ineligible process for no more than its most basic function – making calculations or computations – fails to circumvent the prohibition against patenting abstract ideas and mental processes"), *petition for cert. filed*, (Nov. 8, 2013) (No. 13-584); *see also Lumen View Tech. LLC v. Findthebest.com, Inc.*, No. 13-3599-DLC, 2013 WL 6164341, at *9 (S.D.N.Y. Nov. 22, 2013) ("[T]he application of matchmaking to a computer context is not a 'meaningful' limitation that can save the claim from invalidity.").

Courts in this district have echoed this principle. *See, e.g.*, *Netgear, Inc. v. Ruckus Wireless, Inc.*, No. 10-999-SLR, 2013 WL 5436641, at *7 (D. Del. Sept. 30, 2013) ("the mere reference to a general purpose computer will not save a method claim from being deemed too abstract to be patent eligible"); *UbiComm, LLC*, 2013 WL 6019203, at *4 (generic references to computers are not sufficient to render the claims patentable); *BuySAFE, Inc.*, 2013 WL 3972261, at *3 ("[T]he [patent] likewise does not become patent-eligible by explicitly reciting a 'computer' in each independent claim.").

To determine whether a given claim satisfies Section 101, courts will often consider the machine or transformation test. *Bilski*, 130 S. Ct. at 3227. This test measures whether the claim "(1) is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id*. at 3225. The machine or transformation test, however, is not the sole test, and a court must ultimately focus on whether the claimed invention falls within the abstractness exception to Section 101 patentability. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613 (D. Del. 2011) (Robinson, J.), *aff'd*, 728 F.3d 1336 (Fed. Cir. 2013). Here, a court must determine whether the claim poses "any risk of preempting an abstract idea" by "identif[ing] and defin[ing] whatever fundamental concept

appears wrapped up in the claim." *Accenture Global Servs.*, 728 F.3d at 1341; *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1355 (Fed. Cir. 2013) (Lourie, J., concurring), *petition for cert. filed*, 82 U.S.L.W. 3107 (U.S. Aug. 23, 2013) (No. 13-255).   The balance of the claim is then evaluated to determine whether additional substantive limitations "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself."  *See, e.g.*, *CLS Bank*, 717 F.3d at 1282; *Accenture Global Servs.*, 728 F.3d at 1341, 1344.

Following such precedent, this Court and others in this District have repeatedly invalidated abstract claims like those asserted by IV here.  *See, e.g.*, *BuySAFE, Inc.*, 2013 WL 3972261; *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 711 (D. Del. 2012) (Robinson, J.); *Accenture Global Servs.*, 800 F. Supp. 2d at 613; *Netgear, Inc.*, 2013 WL 5436641; *UbiComm, LLC*, 2013 WL 6019203, at *7.

## II.    The Question of Patent Eligibility Under 35 U.S.C. § 101 Can and in this Case Should Be Made at the Pleading Stage

A patent may be held invalid under Section 101 on a motion to dismiss.  Indeed, the Federal Circuit "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."  *Bancorp Servs., L.L.C.*, 687 F.3d at 1273; *see also Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*, No. 12-2501, 2013 WL 3964909 (D.N.J. July 31, 2013); *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*, No. 12-360-M, 2012 WL 6629561 (W.D. Okla. Dec. 19, 2012), *aff'd*, 2013 WL 5094521 (Fed. Cir. Sept. 12, 2013); *Lumen View Tech. LLC*, 2013 WL 6164341, at *15 ("Here, the Section 101 inquiry encompasses only 'broad subject matter categories' and claim construction is not necessary to reveal any material legal issues and would not be 'a wise use of judicial resources.'") citing *Ultramercial*, 722 F.3d at 1340; *UbiComm, LLC*, 2013 WL 6019203, at *6.

Recent opinions from this district illustrate this point.  For example, Judge Stark granted defendant's motion for judgment on the pleadings after determining that the asserted patent was "directed to an abstract – and, therefore, unpatentable – process."[6]  *BuySAFE*, 2013 WL 3972261, at *4.  In doing so, the court made clear that claim construction "ha[d] no impact on Defendant's 12(c) motion."  *Id*. at *1  n.1.  And, earlier this month, Judge Andrews determined similarly that there was "no need for the Court to independently construe the claim terms," and instead  "simply adopt[ed] the Plaintiff's claim constructions for the purpose of this Motion and finds that this construction would be the construction most favorable to the Plaintiff." *UbiComm, LLC*, 2013 WL 6019203, at *3 n.2.  This Court too has performed a Section 101 analysis without claim construction.  *See CyberFone Sys*., 885 F. Supp. 2d at 715 ("plaintiff also failed to articulate a compelling reason why the court would lack a full understanding of the claimed subject matter if it did not first construe the claims.  In light of this and the foregoing case law, the court concludes that it may proceed without the benefit of claim construction.").[7]  The present motion is, therefore, ripe for decision.

## ARGUMENT

### I.     All Asserted Claims are Invalid under 35 U.S.C. § 101.

All claims of the asserted patents are directed to abstract ideas and thus invalid under 35 U.S.C. § 101.  As a result, IV's Amended Complaint should be dismissed in its entirety.

---

[6]     That defendant's motion was filed under Fed. R. Civ. P. 12(c) and not 12(b)(6) is of no consequence.  Judge Stark's opinion is equally applicable to the present Rule 12(b)(6) motion.

[7]     Despite this precedent, IV will likely argue, as it did in the Capital One action, that claim construction must precede this motion.  Such attempt to postpone the inevitable review of patents already deemed to have "substantial issues of patentability" is unavailing. Much like the plaintiff in *Ubicomm*, IV now has the benefit of citing its fully briefed claim construction positions to defend the merits of this motion if it so chooses.  But there is no claim construction that can salvage IV's patents.

A.      **The '701 patent**

The '701 patent ostensibly describes and claims an idea for shielding a user's private billing information, such as his or her credit card information, when engaging in purchase transactions with different vendors.[8]  *See* '701 patent at D.I. 1 Ex. A; 1:17-20; 2:43-48.  The specification explains that the idea could be implemented in a variety of computing environments on a wide range of user devices.  *Id.* at 4:10-17; 2:57-62; 7:41-48.

Here, IV asserts "at least Claim 5" of the '701 patent, which covers nothing more than the abstract idea of providing a user with different aliases to use in purchase transactions with different vendors.  The claim does not require or even reference a computer.[9]  In fact, the claim can be reduced to the three simple steps: (1) receiving the identity of two businesses, (2) associating an alias ("billing data") with each of those businesses, and (3) providing the aliases to the user.  This concept is just as abstract as those held invalid by the Supreme Court in *Bilski* (hedging risk in a computer environment) and *Benson* (converting binary decimal code to binary code), and by the Federal Circuit in *Dealertrack* (implementing a loan clearinghouse in a computer-aided environment), *Fort Properties* (dividing an aggregated portfolio of real estate into interests in a computer environment), and *CyberSource* (detecting fraud in credit card transactions by gathering the IP addresses used to make prior purchases with a computer and analyzing them).  A comparison of asserted claim 5 with the claims found invalid by the

---

[8]      This is far from an inventive concept or product of human ingenuity.  In *CLS Bank*, Judge Lourie stated in his concurring opinion that patentability requires an "inventive idea" constituting a "genuine human contribution" to the subject matter, such that the claim moves outside of the realm of abstract ideas and into the category of particularized inventions.  *CLS Bank*, 717 F.3d at 1283.  Again, while not controlling, Judge Lourie's guidance is instructive - as evidenced in the recent *Lumen View* decision.  *Lumen View Tech. LLC*, 2013 WL 6164341, at *15.

[9]      Clearly, claim 5 fails the Machine or Transformation Test.  *See Lumen View Tech. LLC*, 2013 WL 6164341, at *15 ("This claim fails the machine prong of the machine or transformation test…. the matchmaking functions claimed *do not require a computer to be performed*.") (emphasis added).

Supreme Court and Federal Circuit in the seminal cases above demonstrates this point.  *See* Exhibit 1; Table 1.

Like the claims in *Bilski* and the Federal Circuit's post-*Bilski* jurisprudence, claim 5 is directed to a patent-ineligible idea.  No computer, machine or other physical structure is identified by the claim as a limitation, or even mentioned in passing.  Likewise, the claim lacks any tie to the professed impetus for the invention (theft of data records generated during transactions with online businesses) or the specific manner in which the patent describes solving this problem.  The claim is so abstract that it could be performed in its entirety during a conversation between two people.  *See BuySAFE*, 2013 WL 3972261, at *10 (the "patent's process would be performed exactly the same way by a person and by a computer, the only difference being that the computer performs the process significantly faster than a human. Such a process is not patent-eligible").

The remaining method claims of the '701 patent are invalid for similar reasons.  Claims 6 through 9, which depend from asserted claim 5, merely add additional aliases and routine steps (*e.g.*, providing real time data to an electronic device, receiving notification of a charge).  This is classic "post-solution activity" that cannot confer patentability on an unpatentable claim.  *Bilski*, 130 S. Ct. at 3230; *see also Accenture Global Servs.*, 800 F. Supp. 2d at 621.  And, claims 1 through 4 merely take the idea reflected in claim 5 and add two field of use restrictions – use of the idea on a generic "electronic device" or "personal digital assistant" and the use of the idea in reference to credit card numbers.  These, too, fail to transform the abstract idea into patentable subject matter.  *Bilski*, 130 S. Ct. at 3231.

The nine remaining claims fall into two categories: "apparatus" (claims 10 through 16) and "article of manufacture" (claims 17 and 18).  Of these claims, most (claims 10 through 14

and claims 17 and 18) are drafted in "*Beauregard*" format.[10]   The '701 patent's *Beauregard* claims simply take the limitations from the method claims and re-label them as program instructions stored in a storage device or computer readable medium.  *Compare*, *e.g.*, '701 patent claim 10 *with* claim 5.  Similarly, apparatus claims 15 and 16 simply re-label limitations drawn from credit-card method claims as means-plus-function limitations.

"Regardless of what statutory category ('process, machine, manufacture, or composition of matter) a claim's language is crafted to literally invoke, [a court] look[s] to the underlying invention for patent-eligibility purposes." *CyberSource*, 654 F.3d at 1374 (citations omitted).  Like the *Beauregard* claims held invalid in *CyberSource*, the alleged invention in the '701 apparatus and article of manufacture claims is the exact same abstract idea set forth in the method claims.  And, just as in *CyberSource*, IV cannot argue here that the effort to mesh the abstract idea with computer storage or with a broader computing environment somehow converts this abstract idea into a special-purpose computer that is patent eligible.[11]  *See also Bancorp*

---

[10]     A *Beauregard* claim is a claim to a computer readable medium containing program instructions for a computer to perform a particular process.  *CyberSource*, 654 F.3d at 1373.

[11]     In this regard, this case is unlike *Ultramercial*.  Indeed, numerous courts – including two this month – have distinguished *Ultramercial* when faced with patent claims as abstract as those asserted by IV here.  *UbiComm, LLC*, 2013 WL 6019203, at *5 ("Plaintiff argues strenuously that this case is similar to the patent in *Ultramercial*, and therefore should be found to be patentable, the Court disagrees"); *Fuzzysharp Techs. Inc. v. Intel Corp*., No. 12-4413-YGR, 2013 WL 5955668, at *13 (N.D. Cal. Nov. 7, 2013) ("Unlike *Ultramercial*, the claims here suggest purely mathematical efficiencies, and do not require an 'extensive computer interface' involving multiple steps and limitations. Nor do the claims in the patents-in-suit implicate particular physical elements beyond a generic computer environment for carrying out their steps") (citations omitted).  To be clear, the *Ultramercial* court "found that the claim was patentable in part because the patent claimed a 'particular internet and computer-based method for monetizing copyrighted products'" and was "far from over generalized, with ***eleven separate and specific steps with many limitations and sub-steps in each category***." *UbiComm, LLC*, 2013 WL 6019203, at *5 (emphasis added).  Unlike here, the claimed steps in *Ultramercial* were more than "token pre- or post-solution steps" – they were "central to the solution itself." *Ultramercial*, 722 F.3d at 1347, 1352.  Neither the '701 patent – or any of IV's asserted patents – claim such a patentable application of an abstract concept.  The claims of those patents "simply append[s]

*Servs.,* 687 F.3d at 1278.   These apparatus and article of manufacture claims are simply method claims masquerading as apparatus claims and fail under Section 101 for the same reasons as the method claims discussed above.[12]

### B.   The '137 Patent

The '137 patent contains three independent claims: one method and two system claims. *See* '137 patent at D.I. 1 Ex. D; 1:20-23.   IV asserts that M&T infringes "at least claim 18." Representative method claim 12, from which claim 18 depends, is drawn to the abstract idea of allowing a user to set self-imposed limits on transactions.[13]   As a threshold matter, there is nothing inventive about this claim – indeed the concept of creating self-imposed financial limits has been long known and used, particularly by individual consumers.   *See CLS Bank*, 717 F.3d at 1283 ("An 'inventive concept' in the § 101 context refers to a genuine human contribution to the claimed subject matter….an 'inventive concept' under § 101 – in contrast to whatever fundamental concept is also represented in the claim – 'must be a product of human ingenuity.'"); *Lumen View Tech. LLC*, 2013 WL 6164341, at *10 ("There is no inventive idea here….Nothing in the '073 patent evinces an inventive idea beyond the idea of the patent holder

---

conventional steps, specified at a high level of generality, to an abstract idea."   *UbiComm, LLC*, 2013 WL 6019203, at *5.

[12]   A majority of the court in *CLS Bank* held that system claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together. 717 F.3d at 1274 n.1 (Lourie, Dyk, Prost, Reyna, & Wallach, JJ., plurality opinion).

[13]   The specification suggests that the idea could be implemented in a variety of ways, for example: (i) the user could be notified that a self-imposed limit has been reached "before, during, or after the point of sale transaction." '137 patent at 2:1-4; (ii) the notification could "be delivered, if desired, by the account clearing network and printed on the user's purchase receipt," or "via a phone call, email or over an Internet connection to the user." *Id.* at 2:4-6; or (iii) the limits could be hard soft limits – for example, a limit on transactions that cannot be exceeded by a particular account user. *Id.* at 2:58-62; 2:1-18.   The specification also makes clear the idea can be used for a variety of accounts, and that users could use a variety of technologies to access their transaction limit information.   *Id.* at 1:65-67; 2:1-4; 2:58-62; 5:48-6:3.

to be the first to patent the computerization of a fundamental process that has occurred all through human history.").

Representative claim 12 consists of only two steps: (1) storing a user profile that contains one or more user-selected categories including a pre-set limit, and (2) communicating transaction summary data, including the user's pre-set limit, for at least one of the categories. These steps are at least as abstract as those in the claims rejected in *Bilski*, *Dealertrack*, *Cybersource and Fort Properties* (*see* Exhibit 1; Table 2) and those previously invalidated by this Court. *See CyberFone Sys.*, 885 F. Supp. 2d at 718 ("[T]he patent, broken down into its component parts, recites steps by which data is obtained, sorted and stored. These steps represent nothing more than a disembodied concept of data sorting and storage and, therefore, the court finds the abstract nature of this patented process to be manifestly apparent."); *Accenture Global Servs.*, 800 F. Supp. 2d at 621 ("The patents are directed to concepts for organizing data rather than to specific devices or systems, and limiting the claims to the insurance industry does not specify the claims sufficiently to allow for their survival.").

Terms such as "database," "communication medium," "receiving device," and "table" recited in claim 12 do not transform the abstract idea into patentable subject matter. Each of these elements refers to "well-understood, routine, conventional" components that, "when viewed as a whole, add nothing significant beyond the sum of their parts." *Mayo*, 132 S. Ct. at 1298. These "post-solution activities" are insufficient to render the claim patentable. *Id.*; *see also CyberSource*, 654 F.3d at 1372.

The machine or transformation test, again, leads to the same result. The claim is not tied to any *particular* machine or apparatus and does not result in a transformation of any article. This is illustrated by the nature and function of these elements – they have no role in the claim,

apart from storing and communicating elements reflecting the abstract idea. *See Fuzzysharp Techs. Inc. v. 3DLabs Inc., Ltd.*, 447 F. App'x 182, 185 (Fed. Cir. 2011) ("[computing and storing data] are essentially synonymous with the term 'computer' and thus add little or nothing to simply claiming the use of a general purpose computer"). In other words, just as they are well-understood, routine, conventional and not "inventive," in *Mayo*'s language, these components do not enhance or integrate with the abstract idea in a way that would require the claim to *particular* machines, and thus are not "inventive." *CyberSource*, 654 F.3d at 1375; *Mayo*, 132 S. Ct. at 1298.

The remaining method claims add no limitations conferring patentability. Claims 13 through 15, which depend from claim 12, add specificity to the types of information provided about user-selected categories (*e.g.*, purchasable items falling within a category, sub-user transaction data). But, like the user-selected data of claim 12, they are purely abstract and, in at least one case ("purchasable items"), directed to a field of use. Claims 16 through 18, which also depend from claim 12, simply specify the type of communication medium – network, wireless, or cellular. Whether viewed as field of use restrictions, or post-solution activity, these limitations do not confer patentability. *Mayo*, 132 S. Ct. at 1298. Independent method claim 5 actually subtracts a limitation (presentation in a table) from claim 12 but is otherwise the same, and the method claims depending from it (claims 6-11) merely add the same dependent limitations discussed above with respect to claim 12.[14]

---

[14]     The nine system claims repackage the method limitations in "system" form and refer back to well-known, routine, and conventional structures described in the specification. They are thus not meaningfully different from the method claims and are unpatentable for the same reasons. *See, e.g.*, *Mayo*, 132 S. Ct. at 1294, 1298.

### C.    <u>The '382 Patent</u>

The '382 patent seemingly claims the abstract and non-inventive idea of personalizing a website display to reflect the user's characteristics and navigation history.[15]  *See* '382 patent at D.I. 1 Ex. B.  The '382 patent has four independent claims.  Three are method claims; one is styled as a system claim.  Claim 21 is representative of the method claims' content.  Claim 7, another independent method claim, focuses on one part of the idea:  providing different data streams of information based on the user's profile.  Claim 16, the other independent method claim, simply adds a "storing" step to claim 21.  The 17 dependent method claims merely add focus to some aspects of the basic idea.

Substantively, the claims cover nothing more than the abstract idea of personalizing a website display to reflect the user's preferences, characteristics and navigation history.  They include some or all of the following steps: (1) receiving data from a user profile, (2) storing that data, (3) sending content based, at least in part, on the user's profile data, and (4) displaying that content via an interactive interface in which some content is selected based on the user's web navigation history and the user's profile data.  This idea is, once again, no less abstract than those previously held invalid by the Supreme Court, the Federal Circuit and this Court.  *See* Exhibit 1; Table 3; *see also Accenture Global Servs.*, 800 F. Supp. 2d at 613; *CyberFone Sys.*, 885 F. Supp. 2d  at 711.[16]

---

[15]    Again, "there is no inventive idea here," nor is this a product of human ingenuity.  *Lumen View Tech. LLC*, 2013 WL 6164341, at *10; *CLS Bank*, 717 F.3d at 1283.

[16]    Although the '382 patent goes to great lengths to describe various ways in which profiles could be personalized, the results of personalization, and the benefits of mapping, it says very little from a technical standpoint about how one skilled in the art could implement any aspect of this idea.  For example, it does not describe any hardware or software used by the user or the website provider to implement the invention.

That these claims refer to "an interactive interface," "web sites," "web pages" and to "a display" is of no consequence. These terms simply refer to aspects of the abstract idea itself, which is the personalization of a website display to reflect the user's characteristics and navigation history.[17] Moreover, these claim elements are the same kind of "well-understood, routine, conventional" structures, termed "post-solution activity," and "field of use limitations" that the Supreme Court determined were insufficient to transform an abstract idea into patentable subject matter. *Mayo*, 132 S. Ct. at 1298. The machine or transformation test confirms this conclusion: the claimed idea is not tied to any *particular* machine or apparatus and does not transform any article into a different state or thing.

The system claims including asserted claim 1, which merely re-write limitations from the method claims into system format, fare no better. That the claims have been restyled as "system" claims is, again, of no consequence. *Mayo*, 132 S. Ct. at 1294. Indeed, because they incorporate only conventional and well-known structures that add nothing of substance to the abstract idea, the system claims fail for the same reasons as the method claims. *Mayo*, 132 S. Ct. at 1298; *Bilski*, 130 S. Ct. at 3230-31; *see also CyberSource*, 654 F.3d at 1372.

### D.  The '587 Patent

All 18 claims of the '587 patent are method claims, of which asserted claim 18 is representative. *See* '587 patent at D.I. 1 Ex. E. Claim 18 sets forth the abstract and non-inventive idea of organizing scanned images. *See Lumen View Tech. LLC*, 2013 WL 6164341, at *10; *CyberFone* Sys., 885 F. Supp. 2d at 719 ("The patent, broken down into its component parts, recites steps by which data is obtained, sorted and stored. These steps represent nothing

---

[17]    Indeed, the '382 patent preempts the personalizing of a website display, and like the invalidated claim in *Lumen View*, "[its] preemptive breadth is enormous." *Lumen View Tech. LLC*, 2013 WL 6164341, at *9.

more than a disembodied concept of data sorting and storage and, therefore, the court finds the abstract nature of this patented process to be manifestly apparent.").

As with the claims in *Bilski*, claim 18 simply breaks this abstract idea into a series of routine steps, including: (1) obtaining hard-copy prints with images from different sources that have been grouped into different categories, (2) scanning them, (3) grouping the scanned images into the same categories as the hard-copy images were grouped, and (4) storing the categorized images. This level of abstraction is identical to that of the claims held invalid in *Bilski*, *Dealertrack*, *Cybersource* and *Fort Properties* (*see* Exhibit 1; Table 4) and by this Court in *CyberFone* and *Accenture Global*. 885 F. Supp. 2d at 718; 800 F. Supp. 2d at 621.

The fact that the claims require that the steps are "in accordance with said associated machine readable instruction for executed on a computer" does not change the outcome – the recitation of a generic "computer" or generic "machine readable instructions" is not an "inventive concept." *See, e.g., UbiComm, LLC*, 2013 WL 6019203, at *4. These limitations refer only to a general purpose computer, and are exactly the type of "well-understood," "routine," and "obvious" steps that the Supreme Court held do not transform an unpatentable abstract idea into a patentable invention. *Mayo*, 132 S. Ct. at 1294, 1298; *Gottschalk v. Benson*, 409 U.S. 63, 71 (1972) (the process for converting binary coded decimal numerals into pure binary numerals on a general purpose computer was not patentable); *see also Lumen View Tech. LLC*, 2013 WL 6164341, at *10 ("The fact that the '073 patent's matchmaking claim is implemented through a computer does not save it from invalidation. Indeed, all of the process patents invalidated in *Benson*, *Flook*, *Bilski*, and *Alice* were implemented by a computer."); *Fuzzysharp Techs. Inc.*, 2013 WL 5955668, at *13 ("Unlike *Ultramercial*, the claims here... do not require an 'extensive computer interface' involving multiple steps and limitations. Nor do the

claims in the patents-in-suit implicate particular physical elements beyond a generic computer environment for carrying out their steps.") (citations omitted).

Likewise, the terms "automatically," "hard copy prints," and "instruction form" do not save the claim. "Automatically" does not change the character or substance of this claim because the term implicates well-understood and routine components, and because it is consistently used to refer to a step in the process that occurs after the images have been scanned – the images are by this time electronic and reside in automated system. *See, e.g.*, *Mayo*, 132 S. Ct. at 1298. Nor do "hard copy prints" or "instruction form" transform the claim into a patent-eligible application of the abstract idea. *Fort Properties*, 671 F.3d at 1322. Finally, the reference to "storing ... on a digital storage medium" is both generic and refers to post-solution activity. *Id.*; *Mayo*, 132 S. Ct. at 1298.

For the same reasons illustrated by *Fort Properties*, *Benson* and *Bilski*, the '587 patent claims fail the machine or transformation test: they lack any tie to a *particular* machine and fails to transform any article. Indeed, these claims are not tied to a *particular* machine because they do not specify a particular type of hardware or a particular type of software or perform any transformation. *See Benson*, 409 U.S. at 64. The other method claims, including the dependent claims, simply add additional post-solution activity that is likewise insufficient to change an unpatentable abstract idea into a patentable application of the idea. *See, e.g.*, *Mayo*, 132 S. Ct. at 1298. The asserted claims of the '587 patent are, therefore, invalid under Section 101.

## CONCLUSION

Based on the foregoing, M&T respectfully requests that the Court grant its motion and dismiss all claims asserted in the Amended Complaint.

_/s/ Chad M. Shandler_

OF COUNSEL:

Frank M. Gasparo
Todd M. Nosher
Venable LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY  10020
Tel: (212) 370-6273
fmgasparo@venable.com
tmnosher@venable.com

William D. Coston
Martin L. Saad
Venable LLP
575 7th Street, NW
Washington, DC 20004
Tel: (202) 344-4000
wdcoston@venable.com
mlsaad@venable.com

Dated:  December 2, 2013

Chad M. Shandler (#3796)
Travis S. Hunter (#5350)
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
Tel: (302) 651-7836
shandler@rlf.com
hunter@rlf.com

*Attorneys for Defendant Manufacturers and Traders Trust Company*